SIGNED THIS: March 22, 2012

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT L. SHINN, | ) | Case No. 10-83750 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SCOTT L. SHINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8139 |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

Whether a properly completed, signed and filed Form 1040 is treated as a federal income tax return for dischargeability purposes depends on when it is filed. Where that line is drawn is the subject of this opinion.

**BACKGROUND**

The Debtor, Scott Shinn (DEBTOR), filed a chapter 7 petition on December 10, 2010. His case was processed as a no-asset case, creditors received no distribution, and he received a general discharge of his prepetition debts, not including his debts to the Defendant, the Internal Revenue Service (IRS), which are the subject of this adversary proceeding. The DEBTOR'S complaint, filed under section 523(a)(1), seeks a determination that his federal income tax liability for the tax years 1998 through 2006 is dischargeable. The IRS concedes dischargeability as to all tax years except 2001 and 2002.

For the tax years 2001 and 2002, the DEBTOR, without requesting an extension, simply did not file a tax return. Following its usual procedures for dealing with such taxpayer behavior, the IRS eventually made its own determination of the DEBTOR'S liabilities based upon information received from payors, but with no information from the DEBTOR. On October 25, 2004, the IRS assessed a deficiency in income tax for 2001 in the amount of $38,327.00, plus penalties and interest of $18,427.08. On September 5, 2005, the IRS assessed a deficiency in income tax for 2002 in the amount of $38,925.00, plus penalties and interest of $10,931.69. The IRS sent notices to the DEBTOR of the assessments along with a demand for payment. The DEBTOR did not pay any part of these assessed liabilities.

On September 1, 2006, the DEBTOR (married filing jointly) filed with the IRS a "Form 1040, U.S. Individual Income Tax Return" for 2002 reflecting a tax liability in the amount of $21,893.00. The form purports to be signed by the DEBTOR and his spouse. Next to their signature appears the handwritten date "4/15/03." The form is also signed

2

by a tax preparer with the date "4/14/03" next to his signature. The IRS admits that based upon the filed Form 1040, the IRS abated its prior tax assessment for 2002 by $17,032.00 and that it did not assess any additional taxes based upon the filed Form 1040, although it did make two additional penalty assessments.

On September 2, 2006, the DEBTOR (again married filing jointly) filed with the IRS a "Form 1040, U.S. Individual Income Tax Return" for 2001 reflecting a tax liability in the amount of $23,963.00. The form purports to have been signed by the DEBTOR and his spouse on "4-15-02" and by the same tax preparer on "4/13/02." The IRS admits that based upon the filed Form 1040, the IRS abated its prior tax assessment for 2001 by $14,364.00 and that it did not assess any additional taxes based upon the filed Form 1040.

The DEBTOR concedes that he did not make any payments to the IRS for any portion of his federal income tax liability for 2001 or 2002. In a sworn declaration submitted with his response to the IRS's motion for summary judgment, he blames his wife at the time (he is now divorced) for spending the funds that were set aside for the tax payments. He declares that without the funds he "was unsure what to do about the unfiled tax returns and unpaid liabilities." He declares that it was always his intention to satisfy his duties under the tax laws.

The IRS filed its motion for summary judgment contending that the late 1040's filed by the DEBTOR are not to be treated as filed returns at all, because they were filed after the IRS assessed the DEBTOR'S tax liabilities. It is the position of the IRS that the tax liabilities are correctly treated under section 523(a)(1)(B)(i), which excepts from discharge a debt for a tax for which a required return was not filed. The IRS seeks a determination of

3

nondischargeability as to the DEBTOR'S adjusted tax liability for 2001 in the amount of $23,963.00, plus interest, and for 2002 in the amount of $21,893.00, plus interest. The IRS does not seek such a determination as to the penalties.

The DEBTOR contends that the 2001 and 2002 Forms 1040, filed late, are nevertheless "returns" for purposes of section 523(a)(1). He contends that his liability for those tax years is dischargeable under that section as (1) the returns were filed prior to two years before the date of the petition; (2) the liability was due three years prior to the filing of the petition; and (3) the liability was assessed more than 240 days prior to the petition.

## **ANALYSIS**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) materially amended section 523 by defining "return." That new definition governs the outcome in this decision. Because the IRS argues for a result not supported by that definition, but one that had been adopted by several circuit courts of appeal pre-BAPCPA, it is helpful to understand the history of the argument.

Since the nondischargeability statute has separate provisions for unfiled tax returns and for late filed tax returns, it is not at all apparent why a debtor who files a completed 1040 after the filing deadline should be treated the same as one who never files a return at all. Prior to BAPCPA, at the behest of the IRS, an unwritten exception to the late-filer provision had been judicially developed for taxpayers who filed a 1040 after the IRS unilaterally assessed their liability, by which those taxpayers get treated, not as late-filers, but as non-filers.

This position was adopted by the Nebraska bankruptcy court in *Matter of Arenson*, 134 B.R. 934 (Bankr.D.Neb. 1991), *aff'd Arenson v. U.S. Through I.R.S.,* 145 B.R. 310 (D.Neb.

4

1992). Among lower courts, it developed as a minority position. *In re Walsh,* 260 B.R. 142 (Bankr.D. Minn. 2001), *aff'd Walsh v. U.S.,* 2002 WL 1058073 (D.Minn. 2002); *In re Mickens,* 214 B.R. 976 (N.D.Ohio 1997), *aff'd* 173 F.3d 855 (6th Cir. 1999); *In re Shrenker,* 258 B.R. 82 (Bankr.E.D.N.Y. 2001). A majority of lower courts held that a completed and signed 1040 could qualify as a return even if filed after a unilateral assessment by the IRS. *In re Nunez,* 232 B.R. 778 (9th Cir.BAP 1999); *In re Savage,* 218 B.R. 126 (10th Cir.BAP 1998); U.S. v. Klein, 312 B.R. 443 (S.D.Fla. 2004); *In re Payne,* 306 B.R. 230 (Bankr.N.D.Ill. 2004), *aff'd* 331 B.R. 358 (N.D.Ill. 2005); *In re Woods,* 285 B.R. 284 (Bankr.S.D.Ind. 2002), *rev'd U.S. v. Woods,* 2004 WL 882057 (S.D.Ind. 2004); *In re Crawley,* 244 B.R. 121 (Bankr.N.D.Ill. 2000); *In re Pierchoski,* 220 B.R. 20 (Bankr.W.D.Pa. 1998), *vacated* 243 B.R. 639 (W.D.Pa 1999).

The IRS's position found a more receptive audience among the circuit courts of appeal, beginning with the Sixth Circuit in *In re Hindenlang,* 164 F.3d 1029 (6th Cir. 1999). Following the majority rule, the bankruptcy court had rejected the IRS's argument in *In re Hindenlang,* 205 B.R. 874 (Bankr.S.D.Ohio 1997), where the debtor failed to file 1040s for the tax years 1985-1988. Only after the IRS calculated his tax liability through "Substitutes for Return," did he file 1040s which were, as found by the court, "substantially similar to the 'Substitutes for Return' earlier prepared by IRS." *Id.* at 876. The debtor contended that because he actually filed returns more than two years before bankruptcy, the tax liabilities were dischargeable.

The IRS made two arguments. First, it argued that the 1040s were not returns because they were based on the Substitutes for Returns (SFRs) prepared by the IRS and

5

were not self-assessed by the debtor. Second, it argued that a taxpayer's right to file his own return expires when the IRS assesses his liability, so that a 1040 thereafter filed cannot be considered a "return."

The bankruptcy court rejected both arguments made by the IRS, relying upon the fact that the statute did not express the requirement that a return be filed prior to assessment, noting the contradiction of implying such a timing requirement with the one already required in section 523(a)(1)(B)(ii), that a return be filed at least two years prior to bankruptcy in order for taxes to be dischargeable. On appeal, the district court affirmed the bankruptcy court.

The Sixth Circuit Court of Appeals reversed the district courts, holding that the post-assessment 1040s filed by the debtor were not "returns" as a "matter of law" under section 523(a)(1)(B) because they served no purpose under the tax law. The court reasoned that once the IRS shows that a Form 1040 submitted after an assessment "can serve no purpose under the tax law," the IRS has met its burden. *In re Hindenlang,* 164 F.3d 1029, 1034 (6th Cir. 1999). The court concluded that where a debtor fails to respond to IRS notices and a deficiency is assessed, the IRS has met its burden of showing that a later filed 1040 was "not an honest and reasonable effort [by the taxpayer] to satisfy the tax law." *Id.* at 1034-35. By determining this result as a matter of law, the Sixth Circuit's decision precludes any consideration of evidence from the debtor that by filing a Form 1040, albeit late, he was making an honest and reasonable effort, as a subjective fact, to meet the self-assessment obligation imposed by the Internal Revenue Code.

The Sixth Circuit adopted and applied the "*Beard* test," a four-part test to determine

6

whether a document filed by a taxpayer with the IRS constitutes a "return." *See Beard v. Commissioner of Internal Revenue,* 82 T.C. 766, 777 (T.C. 1984), *aff'd,* 793 F.2d 139 (6th Cir. 1986). Under the *Beard* test, for a document to qualify as a return:

(1)  it must purport to be a return;
(2)  it must be signed under penalty of perjury;
(3)  it must contain sufficient data to allow calculation of tax; and
(4)  it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

The *Beard* test was applied by the Fourth Circuit Court of Appeals in *In re Moroney,* 352 F.3d 902 (4th Cir. 2003), where the debtor filed late Forms 1040 after the IRS had already filed SFRs and assessed his tax liability for the years in question. The Fourth Circuit held "that income tax forms unjustifiably filed years late, where the IRS has already prepared substitute returns and assessed taxes, do not constitute 'returns' for purposes of 11 U.S.C. § 523(a)(1)(B)(i)." *Id.* at 907. The court relied on the absence of any explanation by the debtor in the record for his failure to file the forms. The Fourth Circuit, unlike the Sixth Circuit, did not adopt a *per se* rule, instead leaving open the possibility that a debtor could explain a late filing in a way that would satisfy the fourth prong of the *Beard* test. The court expressly rejected the broader rule urged by the IRS that any post-assessment filing can never qualify as a return. *Id.*

The Seventh Circuit in *In re Payne,* 431 F.3d 1055 (7th Cir. 2005), issued a 2-1 decision that dealt with a debtor who offered no excuse for having failed to file his 1986 return until six years after it was due and two years after the IRS had unilaterally assessed his tax liability. The court reasoned that the legal test is not whether the filing of a purported return has some utility for the IRS, but whether it is "a *reasonable* endeavor to satisfy the taxpayer's obligations." *Id.* at 1058. The court noted that the filing requirements imposed

7

by the tax laws include the requirement of filing a timely return. *Id.* at 1057. Declining to adopt the Sixth Circuit's *per se* rule, the court held that the debtor's post-assessment filing was not a reasonable attempt to comply with his obligation, and thus was not a "return." *Id.* at 1059-60.

Judge Easterbrook dissented, reasoning that the timeliness of a filing is a requirement distinct from the definition of a "return," which is properly directed to the form and substance of the financial information provided by the taxpayer that enables a complete and accurate assessment to be made on the basis of facts, not estimates. At least because it facilitates compromise, Judge Easterbrook reasoned, "it is inappropriate for a court to proclaim that the document is worthless and hence not a 'return.'" *Id.* at 1061 (Easterbrook, J., dissenting). Faulting the majority for conflating disclosure and payment, he concluded that the "portion of the Internal Revenue Code that must be satisfied honestly and reasonably, if a document is to be called a return, is the statute requiring revelation of financial information, not the statute requiring payment." *Id.* Likewise, Judge Easterbrook pointed out that the timeliness of filing a form is a requirement entirely distinct from the definition of what is a "return." *Id.* He concluded that the document filed by the debtor is a tax return because it contains all of the required information and may have helped the IRS. He would have affirmed the judgment discharging the tax debt.

Applying the pre-BAPCPA provision, the Eighth Circuit adopted Judge Easterbrook's reasoning in *In re Colsen,* 446 F.3d 836 (8th Cir. 2006), where a debtor filed returns years late after the IRS had already assessed his tax liability. The Eighth Circuit nonetheless affirmed the judgment discharging the liability, noting that the fourth *Beard*

criterion contains no mention of timeliness or the filer's intent, declining to create a more subjective definition of "return" that is dependent on the facts and circumstances of a taxpayer's filing or the filer's subjective intent. The court held that the honesty and genuineness of the filing should be determined on the face of the form itself, not from the filer's delinquency or the reasons for it. *Id.* Since the debtor's 1040s allowed his tax obligation to be computed accurately, they served a valid purpose under the tax laws.

BAPCPA amended section 523(a) to define "return" to mean "a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a). When the Seventh Circuit issued its decision in *Payne*, BAPCPA had become law, but did not apply to the debtor's case which had been filed in 1997, eight years prior to the effective date of BAPCPA. In his dissent, Judge Easterbrook opined that under the definition of "return" added by BAPCPA, requiring compliance with "applicable filing requirements," an untimely return is outside of the scope of the definition and could not support a discharge of tax liability, as a matter of law. *Payne,* 431 F.3d at 1060.

Judge Easterbrook's comment was found to be persuasive by the bankruptcy court in *In re Creekmore,* 401 B.R. 748 (Bankr.N.D.Miss. 2008). Noting that the circuit split of authority was resolved or at least rendered moot by the BAPCPA amendment, the court construed the newly added definition of "return" as a matter of first impression. Finding that Congress has now "definitively addressed" the issue, the court held that the debtor's 1994 and 1995 1040s filed late without an extension, did not qualify as "returns" under the

BAPCPA definition, where the debtor failed to take advantage of the safe harbor found in section 6020(a) of the Internal Revenue Code (IRC), 26 U.S.C. § 6020(a), permitting a taxpayer to file a return by consenting to and signing a return prepared by the IRS.

Following *Creekmore,* other bankruptcy courts have also held that BAPCPA'S definition of "return" has abrogated the *Beard* test, so that a late-filed 1040 can never qualify as a "return," save for the narrow exception of IRC § 6020(a). *In re Hernandez,* 2012 WL 78668 (Bankr.W.D.Tex. 2012); *In re Cannon,* 451 B.R. 204 (Bankr.N.D.Ga. 2011); *In re Links,* 2009 WL 2966162 (Bankr.N.D.Ohio 2009). The only circuit court of appeals that has addressed the new definition, has construed it the same way. *In re McCoy,* 666 F.3d 924 (5th Cir. 2012).

On the basis of these well-reasoned opinions, as well as Judge Easterbrook's *dictum,* this Court holds that the new definition of "return," added by BAPCPA to section 523(a), means that an untimely filed 1040 cannot be considered to be a return for dischargeability purposes, unless the narrow exception in IRC § 6020(a) applies.

Taking an eyebrow-raising position, the IRS asks this Court not to follow *McCoy.* Instead, the IRS wants the Court to adopt the holding of *Hindenlang,* that a 1040 is too late to be a return only if filed after the IRS has already assessed the tax liability. As recounted above, the IRS aggressively pushed this position in the federal courts for many years, without much success at the bankruptcy court level, but ultimately gaining traction among the circuit courts. The latter success was achieved notwithstanding that the position was seriously flawed as a matter of statutory interpretation, as pointed out by Judge Easterbrook and by the Eighth Circuit in *Colsen.*

Presumably, Congress was made aware of the IRS's position during the eight years

10

that bankruptcy reform legislation was pending prior to the 2005 enactment of BAPCPA. Yet, when Congress settled on a definition of "return," it did not adopt the long-sought-after rule advocated by the IRS in so many bankruptcy cases. In its argument before this Court, the IRS does not attempt to explain how the new definition came to be included in the bill that became BAPCPA or why its preferred definition was left on the cutting room floor. In effect the IRS is asking this Court to adopt its position not *because of* the language of the new definition, but *in spite of* that language. This Court is simply not inclined to engage in the judicial legislation to which that would amount.[1] *See Freytag v. C.I.R.*, 501 U.S. 868, 874, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (courts are not at liberty to create a statutory exception where Congress has declined to do so); *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 484 (7th Cir. 1997) (courts should not engage in arbitrary line-drawing or create unstated exceptions whenever it seems the legislature overlooked something).

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[1] For what it's worth, this Court agrees with the IRS that its position is better policy than that compelled by the new definition of "return." But the best policy is that adopted in *Colsen.* Regardless, the unambiguous statute must be construed literally. The IRS is advocating the adoption of a different policy than the one now clearly reflected in the statute. That argument is better directed to those whose job it is to make policy.